1
2

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

3
4
5
6
7
8
9
10

| | |
|---|---|
| KORY RAZAGHI and ATTENTUS LLC, )<br>)<br>Plaintiffs, )<br>vs. )<br>)<br>RAZAGHI DEVELOPMENT COMPANY, )<br>LLC; AHMAD RAZAGHI; MANUEL )<br>MORGAN, )<br>)<br>Defendants. )<br>_____ ) | Case No.: 2:18-cv-01622-GMN-DJA<br><br>**ORDER** |

11       Pending before the Court is the Motion to Dismiss the Fourth Amended Complaint,

12  (ECF No. 156), filed by Defendants Ahmad Razaghi ("Ahmad") and Razaghi Development

13  Company, LLC ("RDC"), (collectively, "Defendants").  Plaintiffs Attentus LLC ("Attentus")

14  and Kory Razaghi ("Kory"), (collectively, "Plaintiffs"), filed a Response, (ECF No. 161), and

15  Defendants filed a Reply, (ECF No. 163).

16       Also pending before the Court is Plaintiffs' Motion for Partial Summary Judgement,

17  (ECF No. 157).  Defendants filed a Response, (ECF No. 162), and Plaintiffs filed a Reply,

18  (ECF No. 163).

19       Also pending before the Court is Defendants' Unopposed Motion for Leave to File

20  Excess Pages, (ECF No. 164).[1]

21       Also pending before the Court is Plaintiffs' Motion for Leave to File Supplemental

22  Exhibit to Plaintiffs' Response, (ECF No. 165).  Defendants filed a Response, (ECF No. 166),

23  to which Plaintiffs filed a Reply, (ECF No. 167).

24
25

---

[1] The Court grants Defendant's Motion for Leave to File Excess Pages given that Plaintiff does not oppose the Motion. (*See* Defs.' Unopposed Mot. Leave to File Excess Pages 2:18–19, ECF No. 164).

1    For the reasons discussed below the Court **GRANTS in part** and **DENIES in part** the

2    Motion to Dismiss.  The Court **GRANTS in part** and **DENIES in part** the Motion for Partial

3    Summary Judgment.  The Court **GRANTS** Defendants' Unopposed Motion for Leave to File

4    Excess Pages.  The Court **DENIES as moot** Plaintiffs' Motion for Leave to File a

5    Supplemental Exhibit.

6    ## I.    BACKGROUND

7    This case arises from Defendants' alleged breach of the Settlement Agreement that the

8    parties executed to terminate their state court litigation, which concerned the parties' healthcare

9    management and consulting ventures.  Plaintiffs allege that Kory and Ahmad formed Attentus

10   in 2006. (Fourth Am. Compl. ("FAC") ¶ 8, ECF No. 153).  Attentus then joined with Defendant

11   Manuel Morgan ("Morgan") to form M. Morgan & Associates, LLC ("MMA"). (*Id.* ¶ 9).

12   MMA subsequently executed a contract with Navajo Health Foundation-Sage Memorial

13   Hospital ("Sage"), (the "Sage Contract") in February of 2007. (*Id*. ¶ 12).  Under the Sage

14   Contract, Sage allegedly agreed to pay MMA several hundred thousand dollars per year over a

15   period of three years to develop, finance, and build a new hospital for Sage in Ganado, Arizona.

16   (*Id.* ¶¶ 13).

17   As MMA and Sage's relationship matured, the Sage Contract went through a series of

18   amendments.  MMA and Sage first amended the Sage Contract by executing the "Management

19   Addendum" in March of 2007. (*Id.* ¶¶ 14–15).  The Management Addendum allegedly engaged

20   MMA to provide "management services" to Sage's existing hospital in exchange for $900,000

21   per year, paid in addition to the compensation provided under the original Sage Contract. (*Id.*

22   ¶¶ 17–18).

23   MMA and Sage next amended the Sage Contract in March of 2009 under the "Second

24   Addendum." (*Id.* ¶ 21).  The Second Addendum allegedly extended the term of the

25   Management Addendum through the end of September of 2013, altered compensation terms,

1    and appointed Ahmad as CEO of Sage's hospital. (*Id.* ¶ 22).  In 2010, just before disputes over

2    the Sage Contract arose, Kory and Ahamad executed an Operating Agreement for Attentus (the

3    "Attentus Operating Agreement"). (*Id.* ¶ 23).  Under the Attentus Operating Agreement, Kory

4    and Ahmad allegedly became entitled to equal revenues received for healthcare consulting

5    services, provider group and physician services, and "all related services" paid under the Sage

6    Contract and its amendments. (*Id.* ¶ 24).

7         When disputes over the Sage Contract surfaced in 2010, Ahmad allegedly formed a

8    single-member LLC, Razaghi Healthcare LLC ("RH")[2], and did not disclose the existence of

9    the entity to Kory until January of 2013. (*Id.* ¶¶ 27, 33).  In March 2011, Ahmad and the

10   chairperson of the Sage Board of Directors allegedly executed a "CEO Services Contract"

11   between Sage and RH. (*Id.* ¶ 30).  Under the CEO Services Contract, Ahmad would continue to

12   serve as CEO of Sage until February 28, 2015, and the agreement backdated the

13   commencement of all CEO services performed under the Contract to November 10, 2010. (*Id.*

14   ¶¶ 30–32).  Kory alleges he was unaware of the CEO Services Contract until just before the

15   execution of the Settlement Agreement. (*Id.* ¶ 33).

16        On April 21, 2011, Kory filed a civil suit in Nevada state court against Ahmad, Morgan,

17   RDC, and other related entities ("Prior Litigation"). (*Id.* ¶ 34).  On May 6, 2011, Morgan and

18   Ahmad formed a limited liability company, Morgan Razaghi Healthcare ("MRH"), for the

19   purpose of eventually assuming the obligations of the Sage Contract once the Sage Contract

20   could be assigned from MMA. (*Id.* ¶ 35).  The parties settled the state court litigation on

21   January 11, 2013, executing the Settlement Agreement that Plaintiffs now allege Defendants

22   breached. (*See id.* ¶ 39); (Settlement Agreement, Ex. 6 to Pls.' Mot. Summ. J. ("MSJ"), ECF

23

24   ─────────────────────

25   [2] Plaintiffs allege that there are "Razaghi Healthcare LLCs" formed in Nevada and Arizona. (*See* Am. Compl. ¶ 31 n.1).  The Court uses RH to refer to the companies collectively because neither party alleges that the distinct identities of the companies is material.

No. 130-5).  There are two classes of payments Kory alleges he has not been paid in breach of the Settlement Agreement—"management fees" and "Bonus Payments." (*See* Compl. ¶ 71); (Settlement Agreement ¶¶ 1.7, 1.9).

**A.    Management Fees**

The Settlement Agreement provides that Kory shall be paid one-sixth of all "management fees" received by MMA, MRH, or their successors or assigns under the Sage Contract. (Compl. ¶ 32); (Settlement Agreement ¶ 1.7).  Paragraph 1.7 of the Settlement Agreement also provides, "[i]t is the intent of the parties that if [MMA], AHMAD or [MORGAN] or any of their owned or controlled entities executes a contract with SAGE that includes substantially the same services as are included in the currently existing contract and its extensions, KORY will be entitled to share in the payments received in this Agreement." (Settlement Agreement ¶ 1.7).  The provision also expressly extends to extensions or newly executed "management contracts" that provide management fees to any entities that Ahmad and Morgan hold interests in. (*Id.*).

The Settlement Agreement also includes relevant disclaimers of Kory's rights that may bear on his claim to receive a portion of management fees paid under the CEO Services Contract.  First, ¶ 1.7 of the Settlement Agreement provides that "nothing" in ¶ 1.7 applies to "the contract for AHMAD to serve as CEO of SAGE." (Settlement Agreement ¶ 1.7).  Additionally, Kory disclaimed all rights to payments made under "any contract pursuant to which AHMAD serves as chief executive officer of SAGE." (*Id.* ¶ 1.8).

Plaintiffs allege that Defendants deprived Kory of the benefits of the Settlement Agreement in bad faith. (FAC ¶ 62).  In substance, Plaintiffs contend that Ahmad influenced the Sage Board of Directors to refrain from extending the Sage Contract and instead amend the CEO Services Contract to include payments for the same services. (*Id.* ¶¶ 63–79).  As a result,

Plaintiffs claim that the scope of the payments disclaimed exceeded the intent of the parties when executing the Settlement Agreement. (*Id.*).

### B.    Bonus Payment

Plaintiffs allege through various contract and tort claims that Defendants breached their obligation to disclose and pay Plaintiffs a portion of the $1,842,549.97 bonus payment (the "Bonus Payment") that Sage paid to RH in September of 2012. (*Id.* ¶ 47).  Under the Settlement Agreement, Kory is entitled to one-sixth of all Bonus Payments MRH or its successors or assigns receives under the Sage Contract. (*Id.* ¶ 24); (Settlement Agreement ¶ 1.9).  However, the Settlement Agreement also provides a release that waives all the parties' known or unknown claims that predate the execution of the Settlement Agreement and are connected with the state-court action. (Settlement Agreement ¶ 2.1).  Plaintiffs allege that because the Bonus Payment was given for progress made in managing Sage from 2007–2012, while the Sage Contract remained in effect, Kory should have received a portion of the Bonus Payment. (FAC ¶¶ 41, 47–60).

On July 28, 2018, Plaintiff removed the case from the Eight Judicial District Court, asserting claims for: (1) Breach of the Settlement Agreement; (2) Breach of the Duty of Good Faith and Fair Dealing (Settlement Agreement); (3) Breach of the Duty of Good Faith and Fair Dealing (Attentus Operating Agreement); (4) Breach of Fiduciary Duty; (5) Unjust Enrichment; (6) Conversion; (7) Intentional Interference with Contractual Relations; (8) Accounting; (9) Civil Conspiracy; (10) Alter Ego; and (11) Successor Liability. (*See* FAC ¶¶ 80–139). Defendants move to dismiss and move for partial summary judgment as to Plaintiffs' Fourth Amended Complaint. (*See* Defs.' Mot. Dismiss ("MTD"), ECF No. 156); (Defs.' Mot. Partial Summ. J. ("MSJ"), ECF No. 157).[3]  Plaintiffs also seek leave to file a supplemental exhibit in

---

[3] Defendants' Motion to Dismiss, (ECF No. 156), and Motion for Partial Summary Judgment, (ECF No. 157), are the exact same motion; however, docketed as two separate entries.

1  relation to their Response to the Motion to Dismiss and Motion for Partial Summary Judgment.

2  (*See* Mot. for Leave to File Suppl. Ex., ECF No. 165).

3  **II.   LEGAL STANDARD**

4      **A.      12(b)(6)**

5          Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

6  that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp.*

7  *Comm'n*, 720 F.3d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule

8  12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not

9  give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.

10  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the

11  complaint is sufficient to state a claim, the Court will take all material allegations as true and

12  construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792

13  F.2d 896, 898 (9th Cir. 1986).

14          The Court, however, is not required to accept as true allegations that are merely

15  conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

16  *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action

17  with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a

18  violation is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

19  *Twombly*, 550 U.S. at 555).

20          "Generally, a district court may not consider any material beyond the pleadings in ruling

21  on a Rule 12(b)(6) motion … However, material which is properly submitted as part of the

22  complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard*

23  *Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly,

24  "documents whose contents are alleged in a complaint and whose authenticity no party

25  questions, but which are not physically attached to the pleading, may be considered in ruling on

a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for

summary judgement. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgement. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**B.      Summary Judgment**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A

principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go

beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

## III.   <u>DISCUSSION</u>

Defendants filed a Motion for Partial Summary Judgment and a Motion to Dismiss Plaintiffs' Fourth Amended Complaint. (*See* Mot. Partial Summ. J. ("MSJ"), ECF No. 157); (*see also* Mot. Dismiss ("MTD"), ECF No. 156. Plaintiffs additionally filed a Motion for Leave to File Supplemental Exhibit to their Response to Defendants' Motions. (*See* Mot. for Leave to File Suppl. Ex., ECF No. 165). The Court addresses each motion in turn.

### A.   **Motion for Partial Summary Judgment and Motion to Dismiss, (ECF Nos. 156, 157)**

Defendants seek dismissal as to the following claims: (1) breach of contract concerning the Attentus Operating Agreement; (2) unjust enrichment; (3) constructive fraud; (4) intentional interference with contractual relations; and (5) civil conspiracy. (*See generally* MTD at 7–20). In response, Plaintiff argues that the motion is procedurally barred under Rule 12(g)(2) and otherwise, disputes Defendants' arguments. (Resp. to MTD, ECF No. 161). The Court first addresses whether Defendants' Motions are procedurally barred under Rule 12(g)(2).

#### 1.   <u>Procedural Bar under Rule 12(g)(2)</u>

Plaintiff argues that the Motion to Dismiss raises arguments that could have been raised in Defendants' prior motions to dismiss. (Resp. to MTD 9:4–11:20). Because the successive motion unnecessarily delays the resolution of this case and Defendants base their arguments on

largely identical factual allegations, Plaintiffs contend that the omission of these arguments from previous motions prevents Defendants from re-asserting them in the present motion. (*Id.* 11:13–15).  Defendants argue that many of the arguments in the Motions were previously made in the prior motion to dismiss; however, are now being reasserted due to Plaintiffs' failure to cure the deficiencies in their prior pleadings. (Reply to MTD 8:6–9, ECF No. 163).

Rule 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).  Though technically Rule 12(g) prohibits successive motions to dismiss, the Ninth Circuit and other district courts have allowed multiple motions to dismiss so long as they are not filed "for the purpose of delay, where entertaining the motion would expedite the case, and where the motion would narrow the issues involved." *Doe v. White*, No. 08-1287, 2010 U.S. Dist. LEXIS 4163, at *5 (C.D. Ill. Jan. 19, 2010); *Pepper v. Apple Inc*. (*In re Apple iPhone Antitrust Litig.*), 846 F.3d 313, 319 (9th Cir. 2017) (cataloguing multiple district court decisions).  "Rule 12(g) is designed to avoid repetitive motion practice, delay, and ambush tactics." *Id*. (citing *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1175 (C.D. Cal. 2011) (citations omitted)).

The Court does not find that Rule 12(g) procedurally bars Defendants' Motion to Dismiss in its entirety.  However, Rule 12(g) bars Defendants' arguments relating to the claims for unjust enrichment and intentional interference with contractual relations because Defendants could have raised their arguments in their prior motions to dismiss.  Plaintiffs did not amend their claims for unjust enrichment and intentional interference with contractual relations in their Fourth Amended Complaint. (*See* TAC ¶¶105–113, 120–128); (*see also* FAC ¶¶ 102–109, 117–126).  Given that Plaintiffs allege the same set of facts as to the two claims, Defendants likewise do not raise new arguments as to the two claims.  The present arguments,

therefore, were available to Defendants during the First through Third Amended Complaints. Though the standard in *In re Apple iPhone Antitrust Litig.* is permissive, Defendants engaged in repetitive motion practice as to the unjust enrichment and intentional interference with contractual relations claims, which is exactly what Rule 12(g) was designed to avoid. *See In re Apple iPhone Antitrust Litig.*, 846 F.3d at 319.   The Court accordingly finds that Defendants' arguments as to Plaintiffs' claims for unjust enrichment and intentional interference with contractual relations are procedurally barred under Rule 12(g).

Therefore, the Court limits its below discussion to the following claims: (1) breach of contract—Attentus Operating Agreement; (2) constructive fraud; and (3) civil conspiracy.  The Court begins by addressing Plaintiffs' Second Claim for breach of contract.[4]

### 2.  Breach of Contract – Attentus Operating Agreement

Plaintiffs, in their Fourth Amended Complaint, amended their prior claim for breach of the duty of good faith and fair dealing concerning the Attentus Operating Agreement to the current claim for breach of contract concerning the Attentus Operating Agreement. (*See* TAC ¶¶ 85–98); (FAC ¶¶ 90–101).  Defendants seek dismissal as to Plaintiffs' breach of contract claim because it is barred by: (1) claim preclusion; (2) the release provision of the Settlement

---

[4] The Court notes that Defendants do not fully articulate which claims they seek to dismiss under Rule 12(b), and which claims they move for summary judgment under Rule 56.  Even after Plaintiffs raised this issue, Defendants failed to further clarify which standard they are applying in their Motion, arguing:

> Most of Plaintiffs' arguments arise under Rule 56 because they assert that Plaintiffs' claims fail as a matter of law based on the undisputed material facts.  But the arguments that Plaintiffs have failed to state a claim, which are primarily directed at Plaintiffs' ancillary claims that were found to be inadequately pled in this Court's prior Order, arise under Rule 12(b)(6), as discussed in more detail in the following section.

(Reply to MTD 3:1–5).

Defendants, however, provide some insight as to which standard applies to which argument in their Reply to the MTD. (*See* Reply 3:26–5:1).  As to their arguments concerning the Transfer of Interest Contract and statute of limitations, the Court applies a motion for summary judgment standard under Rule 56. (*Id.* 3:26–4:5).  As to their arguments concerning the release provision under the Agreement and the express written agreement, the Court applies a motion to dismiss standard under Rule 12. (*Id.* 4:6–16).

Agreement; and (3) the Transfer of Interests contract. (MTD 7:6–9). The Court begins by discussing claim preclusion.

### a. *Claim Preclusion*

Defendants first argue that Plaintiffs' breach of contract claim is barred by claim preclusion. (*Id.* 7:10–9:20). Defendants do not articulate which standard to apply as to its claim preclusion argument. However, given that claim preclusion can be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court analyzes Defendants' claim under Rule 12(b)(6). *See Intri—Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir.1984) (per curiam).

Claim preclusion under the doctrine of *res judicata* applies when "a final judgment on the merits bars further claims by the same parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979); *accord Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003). It prohibits the re-litigation of any claims that were raised or could have been raised in a prior action. *Western Radio Servs. Co., Inc. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). To determine whether a state court decision precludes a party from litigating a claim or issue in federal court, the federal court must apply the *res judicata* rules of the state court wherein the prior judgment was rendered. *See Manufactured Home Communities, Inc. v. City of San Jose*, 420 F.3d 1022, 1031 (9th Cir. 2005); *Pedrina v. Chun*, 906 F. Supp. 1377, 1399 (D. Haw. 1995), aff'd 97 F.3d 1296 (9th Cir. 1996).

In Nevada, a claim is precluded by *res judicata* when three elements are met: (1) the parties or their privies are the same as in a prior suit (2) in which a valid final judgment was rendered, and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case. *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 194 P.3d 709, 713 (Nev. 2008).

Here, the first two elements are easily met.  The parties in the instant suit—namely, Kory and Ahmad—were also parties in the Prior Litigation. (*See* First Amended Compl. ("First Am. Compl., Prior Litigation") ¶¶ 1–11, *Korosh Razaghi et al. v. Ahmad Razaghi et al.*, Case No. A-11-639850-B); (*see generally* FAC, ECF No. 153).  Those same parties entered into a Stipulation of Dismissal, with prejudice, which the Court accepted on February 26, 2013. (*See* Stip of Dismissal, Ex. F to Defs.' MTD, ECF No. 156-7).  The narrow issue, therefore, is whether the instant suit is based on the same claims or any part of them that were or could have been brought in the Prior Litigation. *See Five Star Capital Corp.*, 194 P.3d at 713.

Plaintiffs, in their Fourth Amended Complaint, allege that Defendants breached the Attentus Operating Agreement by: (1) directing Sage to remit the Bonus Payment to RH-AZ instead of to MMA; (2) accepting the Bonus Payment when it was delivered; and (3) providing management, development, and other related services for Sage, which should have been conducted and paid for by under the Sage Contract, but instead were performed by Ahmad. (FAC ¶¶ 96–97).  In the Prior Litigation, Kory alleged a breach of fiduciary duty claim, alleging that Ahamad, Morgan, and Manual "usurped [a] valuable business opportunity and diverted it to their own benefit through RDC . . . having already contracted with SAGE for development and facility management projects having an approximately value of $1,800,000 of the type contemplated by the contract between SAGE and MORGAN." (First Am. Compl., Prior Litigation ¶ 52). A breach of contract claim is not the same as a breach of fiduciary duty claim.  Nevertheless, Plaintiffs' claim for breach of contract may be precluded if such claim "could have been brought" in the Prior Litigation. *See Five Star Capital Corp.*, 194 P.3d at 713 (finding that claim preclusion applies to prevent a second suit based on all grounds of recovery that *were or could have been brought* in the first suit) (emphasis added).

Here, Plaintiffs could not have alleged a claim concerning the Bonus Payment in the Prior Litigation because the Bonus Payment was issued after the final pleading in the Prior

1  Litigation. (Pls.' Resp. to Defs.' MSJ 13:7–11).  The First Amended Complaint in the Prior

2  Litigation was filed on June 10, 2012. (First Am. Compl., *Razaghi et al. v. Razaghi et al.*, Case

3  No. A-11-639850-B (June 2012)).  The Bonus Payment was issued in September 2012, four

4  months after the final pleading in the Prior Litigation. (FAC ¶ 47).  Thus, the instant suit is not

5  "based on the same facts and alleged wrongful conduct" as alleged in the first suit.  *Cf. Five*

6  *Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1058, 194 P.3d 709, 715 (2008) ("Since the second

7  suit was based on the same facts and alleged wrongful conduct of Ruby as in the first suit, the

8  breach of contract claim could have been asserted in the first suit.").

9       Defendants unpersuasively argue that the instant breach of contract claim was

10  anticipated because Plaintiffs sought a portion of Sage's future payments in the $1,800,00.00

11  amount alleged in the Prior Litigation. (Reply 10:16–21).  Kory, however, did not learn about

12  the $1.8 million bonus until late 2013. (Decl. of Kory Razaghi ("Kory Decl.") ¶ 13, Ex. A to

13  Resp. to MTD, ECF No. 161-1).  Without knowledge of the Bonus Payment, Kory could not

14  have possibly anticipated a breach of contract claim concerning Sage's issued Bonus Payment

15  to Ahmad. *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1058, 194 P.3d 709, 715 (2008).

16  Using the words "future earnings" does not magically include future payments unbeknownst to

17  Kory.  The Court accordingly finds that Plaintiffs' breach of contract claim concerning the

18  Attentus Operating Agreement is not barred by claim preclusion.

19                    *b.  Release Provision under the Settlement Agreement*

20       Defendants next argue that Plaintiffs' breach of contract claim is barred by the Release

21  Provision in the Settlement Agreement. (MTD 9:21–15:18).  Defendants seemingly seek to

22  dismiss Plaintiffs' breach of contract claim under Rule 12. (*See* Reply to MTD 4:9–11) ("[T]he

23  argument that Kory's claims to the Bonus Payment is barred by the release provision in the

24  Settlement Agreement . . . was raised in the Ahmad Defendants' prior motion to dismiss.").

25  Thus, the Court analyzes Defendants' argument under Rule 12.

The Court previously denied Defendants' arguments under a Rule 12 standard in its last Order.  There, the Court specifically explained the following:

> However, the Court finds that although the release may bar Plaintiffs' claims to the Bonus Payment, dismissal is inappropriate. The Court may only grant a motion to dismiss a claim on the basis of an affirmative defense if, from the facts alleged in the complaint, there is no dispute that the affirmative defense would bar the claim. *See Asarco, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (explaining that the court should not grant a motion to dismiss on the basis of an affirmative defense if "from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact."). With respect to contract releases, a release may be voidable if it was procured without the disclosure of all relevant facts. *See Las Vegas Ins. Adjusters v. Page*, 492 P.2d 616, 616 (Nev. 1972). Here, Plaintiffs allege facts indicating that Ahmad fraudulently concealed the Bonus Payment in an attempt to avoid remitting a portion of the payment to Kory. (*See* TAC ¶¶ 36–43). Accordingly, the Court finds that the facts alleged in the TAC raise a dispute regarding the release's enforceability, and the Court therefore cannot grant dismissal based on the terms of the Release.

(*See* Order 22:10–23, ECF No. 150).  Given that the Court previously considered Defendants' arguments in the prior Motion to Dismiss, and Defendants fail to present additional arguments to persuade the Court otherwise, the Court thus maintains its prior ruling.  Of note, nowhere in Defendant's Motion relating to the release provision does Defendant mention or acknowledge the Court's prior Order. (*See* MTD 9:21–15:18).  The Court thus finds that it cannot grant dismissal based on the terms of the Release Provision.

### c. *Transfer of Interests Contract*

Lastly, Defendants argue that the Transfer of Interests Contract signed on January 23, 2013 between Kory and Ahmad shields Ahmad from any liability based on the Attentus Operating Agreement. (MTD 15:19-26).  Defendants appear to seek dismissal under Rule 56. (Reply to MTD 8:2–4) ("[T]he Ahmad Defendants' arguments based on the Transfer of Interests Contract is also properly treated as arising under Rule 56 because it is based on matters outside the pleadings.").

The starting point for the interpretation of any contract is the plain language of the contract. *McDaniel v. Sierra Health and Life Ins. Co., Inc.*, 118 Nev. 596, 53 P.3d 904 (Nev. 2002).  When a contract contains clear and unequivocal provisions, those provisions shall be construed to their usual and ordinary meaning. *Dickenson v. Nevada*, 110 Nev. 934, 877 P.2d 1059, 1061 (Nev. 1994).

Here, the Transfer of Interests Contract shields Ahmad from *future* liability. (*See* Transfer of Interests Contract, Ex. E to MTD, ECF No. 156-6).   Kory and Ahmad agreed that Ahmad "shall have no further liability as to any dealings of ATTENTUS LLC and/or ATTENTUS PROVIDER GROUP, LLC." (*See id*.).  Under a plain reading of the contract, the Transfer of Interests Contract shields Ahmad from "further liability" from January 23, 2013 and beyond. (*See id*.).  Given that Sage allegedly issued the Bonus Payment in September 2012, the Transfer of Interests Contract cannot absolve Ahmad of prior liability.  Defendants argue that the parties intended to completely end *all* of Ahmad's liability in connection with Attentus LLC by shielding Ahmad from "further liability." (Reply 15:20–25).  Defendants, however, fail to provide any support for such interpretation.  Thus, the Court finds that dismissal is improper as to Plaintiffs' breach of contract claim.

For the foregoing reasons, the Court denies Defendant's Motion for Partial Summary Judgment and Motion to Dismiss Plaintiffs' claim for breach of contract concerning the Attentus Operating Agreement.

### 3.  Constructive Fraud

Plaintiffs add an additional claim for Constructive Fraud in their Fourth Amended Complaint. (FAC ¶¶ 110–116).  Defendants seek dismissal as to Plaintiffs' constructive fraud claim because it is barred by: (1) claim preclusion; (2) the release provision of the Settlement Agreement; (3) statute of limitations; and (4) Rule 12(b)(6) for failure to state a claim. (Defs.' MSJ 17:1–18:3).  The Court addresses each argument in turn.

1

### a.  Claim Preclusion

2  As discussed above, the first two elements of claim preclusion apply—namely, that the

3  Prior Litigation and the instant suit concern the same parties and the Prior Litigation ended in

4  final judgment.  Thus, the relevant issue is whether Plaintiffs' claim for constructive fraud was

5  raised or could have been raised in the Prior Litigation.

6  Kory, in the Prior Litigation, alleged a cause of action for breach of fiduciary duty

7  against Ahmad. (First Am. Compl., Prior Litigation ¶¶ 48–59).  Specifically, Kory alleged that

8  "AHMAD owes the company and KORY a fiduciary duty of loyalty, good faith, honesty and

9  full disclosure." (*Id*. ¶49).  Ahmad purportedly breached such duty by contracting "with SAGE

10  for development and facility management projects . . . of the type contemplated by the contract

11  between SAGE and MORGAN." (*Id*. ¶ 52).

12  Though alleged as a constructive fraud claim, Plaintiffs raise a virtually identical claim

13  in the Fourth Amended Complaint.  Plaintiffs specifically allege that Ahmad's acts of

14  performing work for Sage outside the Sage Contract, including directing various payments to

15  himself, planning to steal the entire business with Sage, forming secret entitles, and directing

16  Manual and Sage in furtherance of such goals, constitute a breach of confidential relationship.

17  (FAC ¶ 113).  That breach of confidential relationship, Plaintiffs allege, is fraudulent. (*Id*.).

18  Both claims arise out of the same nucleus of facts—namely, that Ahmad formed agreements

19  with Sage outside the contract between Sage and MMA.  Accordingly, Plaintiffs' claim for

20  constructive fraud, which arises from a breach of fiduciary duty claim, could have been raised

21  in the Prior Litigation.  Accordingly, the Court dismisses Plaintiffs' constructive fraud claim.[5]

22

23

24

25

---

[5] Because the Court dismisses Plaintiff's constructive fraud claim under claim preclusion, the Court does not discuss Defendants' additional arguments.

### 4. Civil Conspiracy

Plaintiffs amend, in their Fourth Amended Complaint, that "Ahmad and Manuel agreed to harm Kory and Attentus, and acted in furtherance of this objective by forming MRH on May 6, 2011, for the sole purpose and intention of transferring the Sage business away from MMA without Plaintiffs' knowledge or consent." (FAC ¶ 129). Defendants seek dismissal as to Plaintiffs' conspiracy claim because it is barred by: (1) claim preclusion; (2) the release provision of the Settlement Agreement; (3) statute of limitations; and (4) Rule 12(b)(6) for failure to state a claim. (MTD 19:11–20:18). The Court begins by discussing claim preclusion.

#### a. Claim Preclusion

As discussed above, the first two elements of claim preclusion apply—namely, that the Prior Litigation and the instant suit concern the same parties and the Prior Litigation ended in final judgment. Thus, the relevant issue is whether Plaintiffs' claim for conspiracy was raised or could have been raised in the Prior Litigation.

Kory, in the Prior Litigation, alleged a cause of action for breach of fiduciary duty against Ahmad. (First Am. Compl., Prior Litigation ¶¶ 48–59). As part of that allegation, Kory alleged, "AHMAD and MANUEL have formed a new entity, Morgan & Razaghi Healthcare, LLC and have obtained permission from the SAGE board of directors to assign to the new entity all rights and interests in and to the SAGE contracts previously owned by MORGAN without any permission from, recognition of, or compensation for the interests of ATTENTUS or KORY." (First Am. Compl., Prior Litigation ¶ 53).

Similarly, Plaintiffs' conspiracy claim alleged in the Fourth Amended Complaint arises out of the same facts. Plaintiffs allege that Defendants and MMA agreed to transfer business away without Plaintiffs' knowledge or consent. (FAC ¶¶ 129–130) ("Ahmad and Manual agreed to harm Kory and Attentus . . . for the sole purpose and intention of transferring the Sage business away from MMA without Plaintiffs' knowledge or consent, thereby unlawfully

depriving Plaintiffs of their rightful portions of profits from that business.").  Plaintiffs,

therefore, could have raised a claim of conspiracy in the Prior Litigation.  The Court

accordingly grants Defendants' Motion for Summary Judgment as to the civil conspiracy

claim.[6]

In sum, the Court dismisses Plaintiffs' claims for constructive fraud and civil

conspiracy.[7]  Plaintiffs' breach of contract claim as to the Attentus Operating Agreement

survives.  Additionally, Plaintiffs' claims for unjust enrichment and intentional interference

with contractual relations remain pending given that Defendants' arguments concerning such

claims are procedurally barred.[8]

### B.    Motion for Leave to File Excess Pages, (ECF No. 165)

Plaintiffs filed a Motion for Leave to File a Supplement Exhibit to their Response to

Defendants' Motion for Partial Summary Judgment and Motion to Dismiss. (*See generally*

Mot. for Leave to File Suppl. Ex.).  Specifically, Plaintiffs seek leave to submit a supplemental

exhibit to rebut Defendants' argument that the $1.8 million Bonus Payment is time-barred. (*Id*.

3:19–22).  The Court, however, did not analyze the statute of limitations in its underlying

analysis.  Because the supplemental exhibit has no bearing on the Court's analysis, Plaintiffs'

Motion for Leave to File a Supplement Exhibit is denied as moot.

//

---

[6] Because the Court dismisses Plaintiff's civil conspiracy claim under claim preclusion, the Court does not discuss Defendants' additional arguments.

[7] The Court denies leave to amend Plaintiffs' constructive fraud and conspiracy claims because the claims are barred under claim preclusion.  Any amendment would be futile. *See Foman*, 371 U.S. at 182 (finding that leave to amend should be granted in the absence of a reason such as "futility of the amendment").

[8] Defendants also seek dismissal of Plaintiffs' request for punitive damages relating to their constructive fraud, intentional interference with contractual relations, and civil conspiracy claims. (MTD 20:19–23).  Given that the Court grants dismissal as to the constructive fraud and civil conspiracy claims, the Court subsequently dismisses Plaintiff's request for punitive damages as to those two claims.  However, the Court denies Defendants' request to dismiss punitive damages as to the intentional interference with contractual claim since it survives Defendants' motions.

IV.   **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 156), is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment, (ECF No. 157), is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that the parties shall file a Joint Proposed Pretrial Order within thirty (30) days of the entry of this Order.

Dated this 30 day of September, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT