**Marquis Aurbach**
Phillip S. Aurbach, Esq.
Nevada Bar No. 1501
Collin M. Jayne, Esq.
Nevada Bar No. 13899
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
paurbach@maclaw.com
cjayne@maclaw.com
   Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KORY RAZAGHI, an individual, ATTENTUS L.L.C., a Nevada Limited-Liability Company, <br><br> Plaintiffs, <br><br> vs. <br><br> AHMAD RAZAGHI, an individual; MANUEL MORGAN, an individual; and RAZAGHI DEVELOPMENT COMPANY, LLC, an Arizona Limited-Liability Company; <br><br> Defendants. | Case Number: <br> 2:18-cv-01622-GMN-NJK <br><br> **AMENDED JOINT PRETRIAL ORDER** |

After pretrial proceedings in this case,

IT IS ORDERED:

### I.   NATURE OF THE ACTION AND THE PARTIES' CONTENTIONS

This case involves claims by Plaintiffs Kory Razaghi ("Kory") and Attentus L.L.C. ("Attentus") (jointly, "Plaintiffs") against Defendants Ahmad Razaghi and Razaghi Development Company, LLC ("RDC") (jointly, the "Ahmad Defendants") and Manuel Morgan ("Manuel") (collectively, with the Ahmad Defendants, the "Defendants"), concerning (i) a 2013 settlement agreement (the "Settlement Agreement") arising out of disputes relating to a business that provided services to a hospital on the Navajo Nation; and (ii) a "bonus" payment to which Plaintiffs claim they were entitled.

MAC:13437-006 5359340_5 3/15/2024 4:59 PM

1   Plaintiffs' claims for relief include (a) Breach of the Implied Covenant of Good Faith
2   and Fair Dealing related to the 2013 settlement agreement, (b) unjust enrichment related to
3   the bonus paid prior to the settlement agreement, (c) intentional interference with contract
4   (the MMA Operating Agreement), and (d) alter ego.

### A.  PLAINTIFFS' CONTENTIONS

In 2006, brothers Kory and Ahmad formed Attentus. Attentus and Manuel, a Navajo citizen, formed M. Morgan & Associates, LLC ("MMA"), for which Attentus was the sole manager. MMA entered into a contract with Sage Memorial Hospital ("Sage") in the Navajo Nation, by which MMA would render a multitude of management services, and which contemplated development of a new hospital. Several years later, Sage executed a separate contract with one of Ahmad's entities, through which Ahmad served as CEO of Sage. Around this time, the brothers had a falling out and Kory sued Ahmad in a prior case. Kory and Ahmad signed a Settlement Agreement resolving the prior case providing that, among other things, Kory was to receive 1/6 of all future fees for development or management services that Sage paid to Ahmad or any entity controlled by him. Kory's expectation was that he would receive a 1/6 share of any payments for services that were substantially similar to those provided under the contract between Sage and MMA. In exchange, Kory agreed he was not entitled to funds received pursuant to a separate contract for Ahmad to serve as CEO of Sage.

Kory and Attentus, the sole manager of MMA, filed this case when it was discovered that Defendants had received payments from Sage for management and development services, but had orchestrated a manner of receiving those payments so as to avoid the Settlement Agreement's express requirement that such fees be shared with Kory. Plaintiffs allege that Defendants breached their implied covenant of good faith and fair dealing implicit in the Settlement Agreement in this manner.

Second, Plaintiffs contend that they conferred benefits on Sage in the form of management services provided in the course of MMA's work for Sage, from which

Defendants derived a benefit in the form of a $1,842,549 "bonus payment." Defendants accepted and retained the benefit of Plaintiffs' work in providing these management services, and Ahmad concealed the existence of this bonus so as to avoid sharing it with Kory in the settlement of the prior case. It would be inequitable for Defendants to retain this benefit without paying Plaintiffs what they are justly owed from their work.

Third, Plaintiffs contend that Defendants interfered with the MMA operating agreement by diverting the $1,842,549 "bonus" payment away from MMA for the purposes of concealing the payment from Plaintiffs and preventing MMA and Attentus from distributing those funds to Kory.

Finally, Plaintiffs contend that Defendants furthered the above deceit and concealment of funds from Plaintiffs by transferring funds between entities that are in fact alter egos of Ahmad, and that the law should not permit Ahmad to use the corporate fiction to avoid his obligations to Plaintiffs.

**B.   DEFENDANTS' CONTENTIONS**

A non-exhaustive summary of Defendants' factual contentions are as follows:

In 2005, Ahmad invited his brother (Kory) to form a business with him for the purpose of working in the indigenous healthcare space. They formed Attentus. Attentus then partnered with Manuel to form MMA.

MMA entered into a contract with Sage on February 7, 2007, as well as a first addendum on March 13, 2007 (the "First Addendum"), and a second addendum on March 11, 2009 (the "Second Addendum") (collectively, the "Sage/MMA Contract"). Under the Sage/MMA Contract, MMA was hired to develop a new hospital and, subsequently, to provide professional management services to improve the financial and operational problems at the for the purpose of getting that hospital into a financial condition where a new hospital could be developed by Sage. During this timeframe, Ahmad began serving as the CEO of Sage and took over management of the Sage Hospital. Neither MMA, Manuel, Attentus, nor Kory were entitled to any of Ahmad's compensation related to his CEO duties.

1  Indeed, Ahmad was a party to the Second Addendum, which confirmed that Ahmad had
2  taken over management of Sage and that he alone was entitled to the compensation
3  (including bonuses) arising from that role.

4  On March 18, 2011, Sage entered into a "CEO Services Contract" with non-party
5  Razaghi Healthcare, LLC ("RH-AZ"), which is a separate entity formed by Ahmad. The
6  CEO Services Contract provided that RH-AZ would (i) serve as the CEO of Sage and
7  dedicate the services of Ahmad to be Sage's CEO, and (ii) manage the affairs of Sage. The
8  range of services RH-AZ provided to Sage pursuant to the CEO Services Contract were
9  extremely broad. Among other services, the CEO Services Contract required RH-AZ to
10 "manage[] the Sage Memorial Hospital facilities" and "[p]lan[], organize[], direct[] and
11 control[] overall healthcare operations for Sage Memorial Hospital." The CEO Services
12 Contract also entitled RH-AZ to bonuses.

13 Around this same time, the business relationship between Ahmad, Kory, and Manuel
14 deteriorated. In 2011, Kory filed a civil action in Nevada state court relating to the
15 Sage/MMA Contract, the CEO Services Contract, and other business dealings among them
16 (the "2011 Lawsuit").

17 Kory's 2011 Lawsuit was ultimately resolved through a Settlement Agreement,
18 which was fully signed by all parties on January 11, 2013. The Settlement Agreement, by
19 its express terms, resolved all disputes among Ahmad, Kory, and Manuel, and contained a
20 broad and comprehensive release provision of all claims, whether "known or unknown,"
21 among the parties. Through the Settlement Agreement, Kory received substantial financial
22 benefits; including: (i) one-sixth of the remaining payments from Sage under the
23 Sage/MMA Contract, which amounted to nearly $150,000; (ii) forgiveness of a $150,000
24 home loan from Ahmad; and (iii) complete ownership of Attentus and its assets. For
25 example, Attentus owned Attentus Provider Group ("APG"), which was paid substantial
26 sums of money after the Settlement Agreement—including compensation from lawsuits and
27 arbitrations that APG initiated (through Kory) after the Settlement Agreement was executed.

MAC:13437-006 5359340_5 3/15/2024 4:59 PM

It is estimated that Kory received millions of dollars in value as a result of the Settlement Agreement.

Under Paragraph 1.7 of the Settlement Agreement, Kory was also entitled to one-sixth of any *future* contract that included substantially the same services as the Sage/MMA Contract, but, importantly, this paragraph expressly stated that it "shall not apply to **the** contract for AHMAD to serve as CEO of SAGE." Additionally, Paragraph 1.8 of the Settlement Agreement reaffirmed that Kory would have no entitlement to any contract under which Ahmad served as CEO of Sage, stating: "Nothing in this AGREEMENT shall affect or give KORY any rights with respect to any contract pursuant to which AHMAD serves as the chief executive officer of SAGE."  In combination, those two provisions unambiguously foreclosed Kory from asserting any future claims to the Ahmad Defendants' receiving payments under the CEO Services Contract or any CEO contract with Sage. [1]

Following the execution of the Settlement Agreement, Kory ceased doing any work for Sage (in fact, he ceased doing any work for Sage in October 2010). He nonetheless received one-sixth of the payments made by Sage under the Sage/MMA Contract—his share of which amounted to $147,253.68—until the Sage/MMA Contract expired by its own terms on September 30, 2013. Meanwhile, pursuant to the same CEO Services Contract, RH-AZ and, then RDC, continued to serve as CEO of Sage until 2018.

Based on the financial successes achieved by Sage under Ahmad's leadership and management as its CEO, on September 28, 2012, Sage paid RH-AZ a bonus in the amount of $1,842,549.97 (the "Bonus Payment") under the CEO Services Contract, which payment was deposited into RH-AZ's account on October 5, 2012.  Ahmad told Kory about the Bonus Payment and the approximate amount.

---

[1]   Plaintiffs had been provided with a copy of the CEO Services Contract prior to the execution of the Settlement Agreement.

The CEO Services Contract was amended on May 17, 2013, and June 16, 2017, to extend the term of the agreement and make other minor changes, but the services and responsibilities that the Ahmad Defendants were required to provide under the amendments did not materially change. Since the expiration of the Sage/MMA Contract, every payment that Sage made to RDC or Ahmad was made under the CEO Services Contract, as amended, and thus under the express terms of the Settlement Agreement, Kory had no entitlement—or any reasonable expectation of entitlement—to any of those payments.

A non-exhaustive summary of Defendants' legal contentions are as follows:

- ➢ Plaintiffs' implied covenant claim fails because, under the Settlement Agreement, Plaintiffs expressly agreed that they had no right to any fees paid pursuant to the CEO Services Contract or as to any other contract pursuant to which Ahmad served as the CEO of Sage. All fees paid by Sage, both pre and post Settlement Agreement, were paid to the Ahmad Defendants pursuant to the CEO Services Contract.
- ➢ Plaintiffs' implied covenant claim fails because: (i) Plaintiffs have no competent evidence of damages; and (ii) Plaintiffs have no competent evidence to demonstrate that any fees paid under the CEO Services Contract "were for management services like those bargained for in the Sage/MMA Contract" and that those management services were "not encompassed within the original CEO Services Contract."[2]
- ➢ Plaintiffs lack standing to assert claims related to the Bonus Payment.
- ➢ Through the Settlement Agreement, Plaintiffs released any claims relating to the Bonus Payment.
- ➢ Through the Settlement Agreement, Plaintiffs released any claims relating to payments from Sage to the Ahmad Defendants under the CEO Services Contract.

---

[2] ECF No. 150, at 19.

MAC:13437-006 5359340_5 3/15/2024 4:59 PM

- ➢ Plaintiffs' contention that they are entitled to all of the Bonus Payment simply cannot be accurate under any theory; specifically, and notwithstanding the lack of merit to their claims, they could at best be entitled to only one-sixth of the Bonus Payment (the percentage of compensation Kory received pursuant to the terms of the Attentus Operating Agreement).

- ➢ The Ahmad Defendants did not have a duty to disclose the Bonus Payment (irrespective of the fact that they did) to Kory or anyone else.

- ➢ Plaintiffs must first have pled, and then must prove, fraudulent concealment to rescind the release contained in Settlement Agreement and cannot do so because: (i) the Ahmad Defendants did not have a duty to disclose the Bonus Payment; (ii) the Ahmad Defendants did not intentionally conceal the Bonus Payment with an intent to defraud Plaintiffs; (iii) as a matter of law, Plaintiffs must return the consideration they received under the Settlement Agreement to obtain rescission and cannot do so; and (iv) Plaintiffs cannot partially rescind the release.

- ➢ Plaintiffs' claims relating to the Bonus Payment are barred by the statute of limitations.

- ➢ Plaintiffs' unjust enrichment claim fails because: (i) there are written agreements concerning the business relationships; (ii) Plaintiffs cannot demonstrate they conferred a benefit on the Ahmad Defendants; and (iii) non-party RH-AZ received the Bonus Payment, not the Ahmad Defendants.

- ➢ Plaintiffs' intentional interference claim fails because there is no evidence that Ahmad disrupted any term of the MMA Operating Agreement.

- ➢ Plaintiffs' alter ego claim fails because they have no evidence that: (i) there is a unity of interest between Ahmad and RDC; and (ii) adhering to the corporate fiction would promote injustice.

MAC:13437-006 5359340_5 3/15/2024 4:59 PM

## II. STATEMENT OF JURISDICTION

This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1332 and 1367. Personal jurisdiction and subject matter jurisdiction in this Court are also specifically stipulated to in the Settlement Agreement.

## III. STATEMENT OF ADMITTED FACTS

The following relevant facts are admitted by the parties and require no proof.

1. Kory is the younger brother of Ahmad.

2. In 2006, Kory and Ahmad formed Plaintiff Attentus, LLC ("Attentus").

3. Kory and Ahmad were co-managing members of Attentus until the execution of the Settlement Agreement.

4. Attentus and Manuel Morgan ("Manuel"), a member of the Navajo Nation, formed M. Morgan & Associates, LLC ("MMA").

5. MMA's primary purpose was to secure development contracts in the Navajo Nation.

6. Attentus and Morgan entered into an operating agreement concerning MMA (the "MMA Operating Agreement").

7. On February 7, 2007, MMA entered into a Development and Investment Banking Contract (the "Initial Development Contract") with Navajo Health Foundation – Sage Memorial Hospital ("Sage").

8. The purpose of the Initial Development Contract was to develop and build a new hospital for Sage.

9. MMA determined that Sage's finances needed to be stabilized before the development of a new hospital could proceed.

10. On March 13, 2007, MMA and Sage entered into an Addendum to the Development Contract (the "First Addendum").

11. The First Addendum extended the date of the Initial Development Contract from March 13, 2007, to March 13, 2010.

MAC:13437-006 5359340_5 3/15/2024 4:59 PM

12. In July 2008, Attentus formed Attentus Provider Group, LLC ("APG").

13. On March 11, 2009, MMA and Sage entered into a Second Addendum to the Initial Development Contract (the "Second Addendum," collectively, with the Initial Development Contract and the First Addendum, the "Sage/MMA Contract").

14. The Second Addendum extended the end date of the First Addendum from March 13, 2010, to September 30, 2013.

15. On October 16, 2010, Ahmad sent Kory and Manuel an email stating that he would like to meet to discuss dissolving MMA, Attentus, and APG.

16. On March 18, 2011, Sage signed a CEO Services Agreement.

17. On April 21, 2011, Kory filed a lawsuit against Ahmad, Manuel, and others (the "2011 Lawsuit").

18. On October 5, 2012, Sage issued a check for $1,842,549 (the "Bonus Payment").

19. On January 11, 2013, Kory, Attentus, APG, Ahmad, RDC, Razaghi Healthcare, LLC ("RH-AZ"), an Arizona limited liability company, and Manuel (among others) executed a Settlement Agreement (the "Settlement Agreement").

IV. **STATEMENT OF UNCONTESTED FACTS**

The following facts, though not admitted, will not be contested at trial by evidence to the contrary: Not applicable.

V. **STATEMENT OF CONTESTED ISSUES OF FACT**

The following are the primary (but non-exhaustive) list of issues of fact to be tried and determined at trial:

A. **CONTESTED ISSUES OF FACT AS AGREED UPON BY THE PARTIES**

1. Whether Kory knew or should have known that he had a claim to a portion of the Bonus Payment on or before June 20, 2014 (four years prior to the filing of the initial

MAC:13437-006 5359340_5 3/15/2024 4:59 PM

Complaint in this case) or January 2, 2015 (four years prior to the filing of the Second Amended Complaint).

2. Whether Ahmad interfered with the performance of the MMA Operating Agreement.

### B. PLAINTIFFS' STATEMENT OF ADDITIONAL CONTESTED ISSUES OF FACT

1. Whether Kory had a justifiable expectation that Defendants would pay him one-sixth of fees for management services and development services paid to Ahmad or any entity owned or controlled by him after the Sage Contract expired on September 30, 2013.

2. Whether any fees paid to Ahmad or his entities after the expiration of the Sage/MMA Contract were for management services substantially similar to those bargained for in the Sage/MMA Contract.

3. The amount of fees Defendants, or entities owned or controlled by them, received after September 30, 2013 for services substantially similar to those provided under the Sage Contract and its amendments.

4. Whether the basis for the Bonus Payment was as compensation for any services that had been provided by MMA.

5. Whether Ahmad directed Sage to deliver the Bonus Payment to an entity other than MMA in order to circumvent distribution of the funds pursuant to the MMA operating agreement.

6. Whether Ahmad concealed the existence of the $1,842,549 bonus payment from Kory during negotiations of the Settlement Agreement.

7. Whether Plaintiffs conferred a benefit on Defendants for which Defendants received compensation and Plaintiffs did not.

8. Whether Razaghi Development Company, Razaghi Healthcare, and Strategic Healthcare Investments are alter egos of Ahmad Razaghi

MAC:13437-006 5359340_5 3/15/2024 4:59 PM

### C. DEFENDANTS' STATEMENT OF ADDITIONAL CONTESTED ISSUES OF FACT

1. Whether Kory had a justifiable expectation under the Settlement Agreement that Defendants would pay him one-sixth of fees for management services and development services paid under the CEO Services Contract (including its amendments) after the Sage Contract expired on September 30, 2013.

2. The nature of the services provided by MMA or MRH to Sage: (i) prior to the execution of the Settlement Agreement; (ii) at the time of the execution of the Settlement Agreement; and (iii) after the execution of the Settlement Agreement.

3. The nature of the services provided by RH-AZ or RDC to Sage: (i) prior to the execution of the Settlement Agreement; (ii) at the time of the execution of the Settlement Agreement; and (iii) after the execution of the Settlement Agreement.

4. Whether any fees paid under the CEO Services Contract "were for management services like those bargained for in the Sage/MMA Contract" and that those management services were "not encompassed within the original CEO Services Contract."

5. Whether the basis of the Bonus Payment was, at the time of the Settlement Agreement, for any services that had been provided by MMA.

6. Whether Ahmad caused Sage to direct the Bonus Payment to RH-AZ instead of MMA.

7. Whether Ahmad told Kory about the Bonus Payment before the execution of the Settlement Agreement.

8. Whether the Ahmad Defendants received the Bonus Payment.

## VI. STATEMENT OF CONTESTED ISSUES OF LAW

The following are the primary (but non-exhaustive) list of issues of law to be tried and determined at trial:

### A. CONTESTED ISSUES AS AGREED UPON BY THE PARTIES

**1. Breach of the Implied Covenant of Good Faith and Fair Dealing**

MAC:13437-006 5359340_5 3/15/2024 4:59 PM

      a.      Whether the Ahmad Defendants breached the implied covenant of good faith and fair dealing as to the Settlement Agreement.

      b.      Whether Plaintiffs' justified expectations under the Settlement Agreement were denied.

      c.      Whether Plaintiffs are entitled to damages related to their claim for breach of the implied covenant of good faith and fair dealing.

**2.    Bonus Payment Claims**

      a.      Whether the release provision in the Settlement Agreement bars Plaintiffs' claims concerning the Bonus Payment.

      b.      Whether Plaintiffs' claims are barred by the statute of limitations.

**3.    Unjust Enrichment (Bonus Payment)**

      a.      Whether Plaintiffs conferred benefits on the Ahmad Defendants.

      b.      Whether the acceptance and retention by the Ahmad Defendants of any benefits conferred by the Plaintiffs is inequitable.

**4.    Intentional Interference with Contractual Relations**

      a.      Whether Ahmad engaged in intentional acts intended or designed to disrupt the MMA Operating Agreement.

      b.      Whether the MMA Operating Agreement was actually disrupted.

      c.      Whether Plaintiffs suffered damages.

**5.    Alter Ego**

      a.      Whether Ahmad influenced and governed RDC.

      b.      Whether there is such unity of interest and ownership that Ahmad is inseparable from RDC.

      c.      Whether the adherence to the corporate fiction of a separate entity would, under the circumstances, sanction fraud or promote injustice.

MAC:13437-006 5359340_5 3/15/2024 4:59 PM

B. **PLAINTIFFS' STATEMENT OF ADDITIONAL CONTESTED ISSUES OF LAW**

1. Whether Kory is entitled to damages (under any theory asserted) related to the $1,842,549 bonus payment regardless of the release in the Settlement Agreement due to Ahmad's concealment of the bonus payment during negotiations of that contract.

2. Whether the release in the Settlement Agreement can be voided separately from the rest of the Settlement Agreement pursuant to the severability clause therein.

3. Whether Attentus, as manager of MMA, can pursue claims on MMA's behalf.

4. Even if no benefit was conferred on Defendants, whether Defendants have and retain benefits which in equity and good conscience belong to Plaintiff.

C. **DEFENDANTS' STATEMENT OF ADDITIONAL CONTESTED ISSUES OF LAW**

1. **Breach of the Implied Covenant of Good Faith and Fair Dealing**

    a. Whether Plaintiffs can offer competent evidence of their alleged damages.

    b. Whether the statute of limitations bars Plaintiffs' claims.

2. **Bonus Payment Claims**

    a. Whether Plaintiffs have standing to assert claims related to the Bonus Payment.

    b. Whether Plaintiffs can assert that they are entitled to more than one-sixth of the Bonus Payment.

3. **Unjust Enrichment (Bonus Payment)**

    a. Whether the existence of written agreements (e.g., the Attentus Operating Agreement) bars a claim for unjust enrichment.

    b. Whether the Ahmad Defendants appreciated any benefits conferred by the Plaintiffs.

4. **Intentional Interference with Contractual Relations**

MAC:13437-006 5359340_5 3/15/2024 4:59 PM

a. Whether Plaintiffs' claim is barred by the intra-corporate conspiracy doctrine.

## VII. EXHIBITS

See Exhibit 1 (Plaintiffs' Pretrial Disclosures) and Exhibit 3 (Defendants' Pretrial Disclosures).

1. **As to the following exhibits, the party against whom they will be offered objects on the grounds stated**:  See Exhibit 2 (Plaintiffs' Objections to Defendants' Pretrial Disclosures) and Exhibit 4 (Defendants' Objections to Plaintiffs' Pretrial Disclosures)..

2. **Electronic Evidence**: The parties reserve the right to present electronic evidence for purposes of jury deliberations or for demonstrative purposes only.

3. **Depositions:** See Exhibit 1 (Plaintiffs' Pretrial Disclosures) and Exhibit 3 (Defendants' Pretrial Disclosures).

## VIII. WITNESSES WHO MAY BE CALLED BY THE PARTIES AT TRIAL:

1. Plaintiffs' witnesses:

   a. Kory Razaghi
      c/o Phillip S. Aurbach, Esq. and Collin M. Jayne, Esq.
      Marquis Aurbach
      10001 Park Run Drive
      Las Vegas, Nevada 89145

   b. Ahmad Razaghi
      c/o Dennis L. Kennedy, Esq. and Paul C. Williams, Esq.
      Bailey Kennedy
      8984 Spanish Ridge Avenue
      Las Vegas, Nevada 89148

   c. Michael Katigbak
      47 Nightshade Court
      Henderson, NV 89074

   d. Plaintiffs reserve the right to call any of the Defendants' listed witnesses.

2. Defendants' witnesses:

   a. Ahmad Razaghi

MAC:13437-006 5359340_5 3/15/2024 4:59 PM

        c/o Dennis L. Kennedy, Esq. and Paul C. Williams, Esq.
        Bailey Kennedy
        8984 Spanish Ridge Avenue
        Las Vegas, Nevada 89148

  b.    Allen Billings
        c/o Dennis L. Kennedy, Esq. and Paul C. Williams, Esq.
        Bailey Kennedy
        8984 Spanish Ridge Avenue
        Las Vegas, Nevada 89148

  c.    Stenson Wauneka
        c/o Dennis L. Kennedy, Esq. and Paul C. Williams, Esq.
        HC58 Box 90, Unit 43
        Ganado, Arizona 86505

  d.    Kory Razaghi
        c/o Phillip S. Aurbach, Esq. and Collin M. Jayne, Esq.
        Marquis Aurbach
        10001 Park Run Drive
        Las Vegas, Nevada 89145

  e.    Franklin Hoover
        4813 W. Calle Don Alberto
        Tucson, Arizona, 85757-1424

  f.    Todd McGeee
        c/o Bailey Kennedy, LLP
        8984 Spanish Ridge Avenue
        Las Vegas, Nevada 89148

  g.    Tausif Hasan
        c/o Bailey Kennedy, LLP
        8984 Spanish Ridge Avenue
        Las Vegas, Nevada 89148

  h.    Defendants reserve the right to call any witnesses listed by the Plaintiffs.

**IX.   MOTIONS IN LIMINE**

    1.    No motions in limine have been filed to date.

**X.   TRIAL DATES:**

The Court previously set the case for jury trial on a stacked calendar on September 23, 204 at 8:30 a.m., with a calendar call held on September 17, 2024, at 9:00 a.m.

MAC:13437-006 5359340_5 3/15/2024 4:59 PM

### XI. TIME FOR TRIAL.

It is estimated that the trial will take a total of 10 days.

APPROVED AS TO FORM AND CONTENT:

Dated this 15th day of March, 2024.                Dated this 15th day of March, 2024

BAILEY✦KENNEDY                                     MARQUIS AURBACH

By:  /s/ Paul Williams                             By:  /s/ Collin Jayne
    Dennis L. Kennedy, NV Bar No. 1462            Phillip S. Aurbach, Esq.
    Paul C. Williams, NV Bar No. 12524             Nevada Bar No. 1501
                                                   Collin M. Jayne, Esq.
    ROTHSTEIN DONATELLI LLP                        Nevada Bar No. 13899
    Richard W. Hughes (*pro hac vice*)             10001 Park Run Drive
    Donna M. Connolly (*pro hac vice*)             Las Vegas, Nevada 89145
    Attorneys for Defendants Ahmad                 Attorneys for Plaintiffs
    Razaghi and Razaghi Development
    Company, LLC

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Page 16 of 18

MAC:13437-006 5359340_5 3/15/2024 4:59 PM

XII. **ACTION BY THE COURT.**

This case is set for ~~court~~/jury trial on the ~~fixed~~/stacked calendar on <u>September 23, 2024 at 8:30 a.m</u>; Calendar call will be held on <u>September 17, 2024 at 9:00 a.m.</u>

DATED: <u>March 19, 2024</u>

_____
UNITED STATES DISTRICT JUDGE

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **AMENDED JOINT PRETRIAL ORDER** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 15th day of March, 2024.

☒ I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☐ I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

N/A

/s/ Collin Jayne
An employee of Marquis Aurbach

MAC:13437-006 5359340_5 3/15/2024 4:59 PM