1
2
3

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

4   KORY RAZAGHI, an individual, and
    ATTENTUS LLC, a Nevada Limited-
5   Liability Company,                          Case No. 2:18-cv-01622-EJY

6                Plaintiffs,

7         v.                                     **ORDER**

8   AHMAD RAZAGHI, et al.,

9                Defendants.

10

11   **I.     Background**

12          At the center of this dispute lie two contracts between various parties and Sage Memorial

13   Hospital ("Sage").   Plaintiffs allege, *inter alia*, that Defendants circumvented the intent of a

14   settlement agreement that resolved prior litigation brought by Kory Razaghi (sometimes "Kory")

15   against Ahmad Razaghi (sometimes "Ahmad") and others by shifting management services

16   performed under a pre-existing contract with Sage through which Kory received financial revenue

17   (the "MMA Contract") to a new contract with Sage that excluded Kory and benefited Ahmad and

18   his companies (the "CEO Services Contract").

19          Through Defendants' pending Motion in Limine Nos. 1 through 4 (ECF. Nos. 281, 282, 283,

20   284)[1] Defendants seek to exclude all testimony regarding the nature of services provided to Sage

21   under the CEO Services Contract, as well as all testimony and evidence regarding Plaintiffs' alleged

22   damages arising from development fees, management fees, termination fees, and a bonus payment

23   to which they claim entitlement under this contract.  Defendants contend expert witness testimony

24   is required for each of these issues and that even if lay testimony suffices Kory Razaghi lacks the

25

---

26   [1]      Defendants' Motion in Limine No. 1 seeks to preclude Plaintiffs from offering testimony regarding the nature
     of services offered by Razaghi Healthcare, LLC (Arizona) and Razaghi Development Company LLC provided to Sage.
27   Defendants' Motion in Limine No. 2 seeks to preclude Plaintiffs from offering testimony or evidence regarding their
     development and management fee damages.  Defendants' Motion in Limine No. 3 seeks to exclude evidence testimony
     regarding the bonus payment and Plaintiffs' bonus payment damages.  Defendants' Motion in Limine No. 4 seeks to
28   prevent Plaintiffs from offering testimony and evidence regarding termination fee damages.

1

1    requisite personal knowledge to testify as to any services provided under the CEO Services Contract.

2    Defendants further argue that testimony regarding any of these subjects is unfairly prejudicial and

3    should thus be excluded under Federal Rule of Evidence ("FRE") 403.

4    **II.      Legal Standard**

5           Motions in Limine are a well-recognized judicial practice authorized under case law. *Ohler*

6    *v. United States*, 529 U.S. 753, 758 (2000). The Court's power to rule on motions in limine arises

7    from "the district court's inherent authority to manage the course of trials." *Luce v. United States*,

8    469 U.S. 38, 41 n.4 (1984).  Regardless of its initial decision on a motion in limine, the Court may

9    revisit the issue at trial.  Fed. R. Evid. 103, Advisory Committee's Note to 2000 Amendment ("Even

10   where the court's ruling is definitive, nothing in the amendment prohibits the court from revisiting

11   its decision when the evidence is to be offered."); *Luce*, 469 U.S. at 41-42 ("[E]ven if nothing

12   unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to

13   alter a previous in limine ruling.").  "The Supreme Court has recognized that a ruling on a motion in

14   limine is essentially a preliminary opinion that falls entirely within the discretion of the district

15   court." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing Luce, 469 U.S. at

16   41-42).

17   **III.     Testimony Regarding Services Performed Under the CEO Services Contract**

18          In Motion in Limine No. 1 Defendants seek to preclude Plaintiffs from offering any

19   testimony as to the nature of the services provided to Sage under the CEO Services Contract.

20   Defendants argue the issue of whether such services were substantially similar to those under the

21   MMA Contract is not within the normal knowledge and understanding of a jury and thus requires

22   expert testimony.  ECF No. 281 at 16.  In the alternative, Defendants argue Kory Razaghi cannot

23   offer lay testimony because he lacks the personal knowledge necessary under FRE 701. *Id.* at 17-18.

24          Testimony from a lay witness must be "(a) rationally based on the witness's perception; (b)

25   helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not

26   based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed.

27   R. Evid. 701.  To this end, the Court finds that with an appropriate foundation laid, Kory Razaghi

28   (and other witnesses) may be able to offer lay opinion testimony under FRE 701 regarding services

1   provided to Sage under the CEO Services Contract, subject to FRE 403 and any other objections

2   raised at the time of trial.  More specifically, to the extent the proper foundation is laid, witnesses

3   may be able to testify based on their observations, related experience, and common sense arising

4   from and relating to the particular facts and circumstances of this dispute, and such testimony will

5   be helpful to understanding the factual allegations made, will be rationally based on the witness's

6   perceptions, and will not be held out as within the scope of expert testimony.  *See King v. Biter*, Case

7   No. 1:15-cv-00414-JLT-SAB (PC), 2023 WL 2189235, at **3-4 (E.D. Cal. Feb. 23, 2023) (a lay

8   witness can discuss events or opinions rationally based on his own perceptions or experiences).

9   **IV.     Testimony and Evidence as to Damages**

10          **A.     Development and Management Fee Damages.**

11                  *1.     Expert Testimony is not Necessary.*

12          Defendants seek to preclude any testimony regarding Plaintiffs' alleged damages arising

13   from fees paid under the CEO Services Contract.  ECF No. 282.  Defendants argue that each category

14   of damages involves difficult calculations and, therefore, expert testimony must be offered to

15   establish such damages.  *Id.* at 3; ECF No. 284 at 17.  This argument is unpersuasive.  It is no doubt

16   true that when a measure of damages involves complex calculations requiring specialized knowledge

17   of relevant factors and industry standards—things outside the knowledge of the average juror—

18   testimony by an expert witness may be necessary.  But when the calculations involve simple math

19   or the use of numbers that are clearly presented by the evidence, no expert testimony is needed.  *See*

20   *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F.Supp.3d 932, 947 (C.D. Cal. 2014) (rejecting

21   the argument that "simple mathematical calculations constitute expert testimony").  As Plaintiffs

22   explain, their calculation of management fee damages is simply the sum of all fees for services under

23   the CEO Contract that are substantively similar to those under the MMA Contract, as documented

24   by Sage's invoices,[2] divided by six.  ECF No. 301 at 9-11.  While Plaintiffs bear the burden at trial

25   of establishing that the services performed under the MMA Contract identified on the produced

26   invoices were, in fact, substantially similar to services performed under the CEO Services Contract

27   also identified on produced invoices, the calculation to be performed if this burden is met is not so

28   _____

    [2]   The Court previously held that the invoices are admissible without expert testimony.  ECF No. 230.

1   complicated as to require an expert.  Whether Plaintiffs' calculation of damages is correct and

2   supported by the evidence is a separate question from whether an expert witness is required for

3   admissibility.

4          The Court further finds Defendants' citation to *Chicago Joe's Tea Room, LLC v. Vill. of*

5   *Broadview*, 94 F.4th 588, 599 (7th Cir. 2024), unavailing.  That case involved a former employee of

6   an adult entertainment venue providing lay opinions regarding lost profits of an another, as-of-yet

7   unopened, adult entertainment venue in a different neighborhood.  The Seventh Circuit held that the

8   significant differences between the two businesses, the complicated variables inherent in predicting

9   profits, and the witness's lack of personal knowledge of his former business after 2007 meant that

10  his estimate of damages did not qualify as lay opinion under FRE 701.  *Id.* at 598.  Here, Plaintiffs

11  are not attempting to speculate as to future profits under the CEO Services Contract.  Rather, past

12  revenues under that contract are already documented by invoices and audited financial statements.

13  The simple process of adding the values from these invoices together is a far cry from the in-depth

14  market analysis required in *Chicago Tea Room*.

15         Defendants argue that the calculations in this matter are more complicated than the invoices

16  make them appear because of the associated overhead expenses Defendants incurred under the CEO

17  Services Contract.  ECF No. 282 at 18.  The Court disagrees.  The Settlement Agreement under

18  which Plaintiffs bring their claim of management fees states that Kory Razaghi "shall be paid one-

19  sixth (16.67%) of all management fees paid by SAGE" under any "new management contract . . .

20  between SAGE and . . . any other entity in which AHMAD or MANUEL hold a member, ownership,

21  or controlling interest."  ECF No. 216-1 at 6.  Defendants have not pointed to any provision of this

22  or any other agreement that would require costs to be deducted from gross fee payments before Kory

23  would be entitled to his portion and, in fact, the only provision that mentions costs relates to

24  apportioning tax liability for 2010, 2011, and 2012.  *Id.* at 5.  Because of the relative simplicity of

25  the calculations involved here, the Court finds that expert testimony is not required on this issue.

26              *2.       Damages Evidence is Not Excluded Under Rule 37(c)(1).*

27         Defendants argue that Plaintiffs should be precluded under Federal Rule of Civil Procedure

28  ("FRCP") 37(c)(1) from offering any evidence regarding these damages.  Specifically, Defendants

1    contend that Plaintiffs violated their Rule 26 obligations by not disclosing the factual basis for their

2    management fee obligations.  ECF No. 282 at 20.  FRCP 26(a)(1)(A)(iii) requires disclosure of "a

3    computation of each category of damages claimed by the disclosing party—who must also make

4    available for inspection and copying … the documents or other evidentiary material, unless

5    privileged or protected from disclosure, on which each computation is based." Fed. R. Civ. Pro.

6    26(a)(1)(A)(iii).  As referenced earlier, Plaintiffs' calculation of management fee damages included

7    in their Eighth Supplemental Disclosures consists of a lump sum, assertedly representing all

8    management and development fees paid to Ahmad and entities under his control from 2013 to the

9    present, divided by six.  ECF No. 282 at 11.  Defendants assert the evidentiary basis for this sum

10   was not included with this disclosure.  *Id.*

11         Plaintiffs argue that the invoices and financial statements used to calculate this sum were

12   produced years before discovery closed and, therefore, Defendants cannot now claim they were left

13   in the dark. ECF No. 301 at 22.  Although Plaintiffs did not expressly state in their Rule 26 disclosure

14   that these invoices and statements were the basis of their damages calculation, the failure to meet

15   disclosure obligations does not automatically necessitate exclusion.

16         The Court applies the reasoning found in *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed.Appx.

17   705, 713 (9th Cir. 2010).  Defendants do not argue, nor can they reasonably assert, given the history

18   of this case, the discovery conducted, the underlying litigation, and settlement agreement of that

19   litigation that prompts this instant case, that they did not know the documentary source of the

20   damages calculation on which Plaintiffs rely.  Had Defendants wanted to press further on the source,

21   they had the ability to do so.  But, Defendants waited until a Motion in Limine to attempt a back

22   door second summary judgment motion.  Defendants did not seek reconsideration of the summary

23   judgment order, but now, just weeks before the trial, seek to disrupt the trial proceedings through a

24   second bite at the apple.  Motions in limine used to eliminate entire categories of claims, evidence,

25   or damages are not favorably received by the Court.  *Badger v. Wal-Mart Stores, Inc.*, Case No.

26   2:11-cv-1609-KJD-CHW, 2013 WL 3297084, at *5 and n.4 (D. Nev. June 28, 2013) *citing Meyer*

27   *Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1378 (Fed. Cir. 2012).

28

1    Finally, the Court finds no bad faith or willfulness by Plaintiffs as the documents on which

2    their damages calculations are based were available as early as 2019 and were identified as the basis

3    for their calculation since at least January 2023.  ECF Nos. 211 at 34; 301 at 22.  Defendants will

4    not be rewarded for sitting idly by and doing nothing only to claim exclusion at the eleventh hour.

5    *Atari Interactive, Inc. v. Redbubble, Inc.*, Case No. 18-cv-03451-JST, 2021 WL 6014734 (N.D. Cal.

6    Oct. 14, 2021); *Santiago v. Hawaii*, Case No. 16-00583 DKW-KSC, 2017 WL 5617062 (D. Haw.

7    Nov. 21, 2017).

8    Based on the foregoing, the Court denies Defendants' Motion in Limine No. 2.

9    B.    Termination Fee Damages.

10   Defendants move to preclude testimony relating to Plaintiffs' claimed damages arising from

11   the termination fee paid to Razaghi Development Company on August 27, 2018.[3]  Defendants again

12   argue that expert testimony is required to "disentangle" the portion of the termination fee that relates

13   to CEO services performed by Ahmad Razaghi from the portion that relates to management services,

14   if any such portion exists at all.  ECF No. 284 at 16-18.  Defendants' argument focuses on the

15   discrepancy between Plaintiffs' Eighth Supplemental Disclosures, in which they assert they are

16   entitled to one sixth of the entire termination fee (ECF No. 284-5 at 12), and other instances in which

17   they appear to acknowledge they are entitled only to one sixth of the portion not specifically set

18   aside for Ahmad's services as CEO.  ECF No. 284-4 at 5.  To the extent any of Plaintiffs' prior

19   statements on this matter are inconsistent, this is a proper basis for cross examination or grounds for

20   impeachment, not exclusion of evidence.  Defendants fail to explain how the question of which

21   portion of the termination fee, if any, relates to management services depends on the kind of

22   technical or specialized knowledge that only an expert witness may provide.  The Court does not

23   rule on whether Plaintiffs will be able to establish the necessary foundation for lay testimony on this

24   question; however, the Court declines to hold that it is impossible for them to do so.  Defendants'

25   Motion in Limine No. 4 is denied.

26

27   [3]    Defendants also argue that testimony on this issue should be excluded because Plaintiffs disclaimed any right
to the termination fee by the terms of the Settlement Agreement.  ECF No. 284 at 16.  Because this is not a question of
28   admissibility, but one of substance, it more properly belongs with Defendants' arguments on the merits and is not
addressed here.

1       C.     Bonus Payment Damages.

2              Defendants' Motion in Limine No. 3 argues, among other things, that Plaintiffs lack standing

3 to assert a claim for any portion of a bonus payment made by Sage to Razaghi Healthcare, LLC (AZ)

4 and, therefore, no evidence of any kind can be introduced in favor of this claim. Defendants' Motion

5 ignores that Plaintiffs seek these damages under their unjust enrichment and intentional interference

6 with the M. Morgan & Associates ("MMA") operating agreement claims, both of which survived

7 summary judgment. *See* ECF No. 230. As stated above, Defendants filed no motion for

8 reconsideration of the Court's Order denying summary judgment on these claims. Further, setting

9 aside any evidentiary challenge raised, which the Court rejects for the reasons given in denying their

10 previous Motions, the Court nonetheless addresses Defendants' standing argument.

11              Plaintiffs' assert an unjust enrichment claim that requires Plaintiffs to prove (1) Defendants

12 accepted and retained a benefit conferred by Plaintiffs on Defendants to which the bonus payment

13 applied, and (2) Defendants unjustly kept that benefit without sharing the same with Plaintiffs. ECF

14 No. 153 at 16. Plaintiffs have standing to bring this claim as they assert a legal right and an injury-

15 in fact that is concrete and legally protected with a causal connection to Defendants' conduct that

16 can be redressed by a favorable decision of the court. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-

17 61 (1992) (citation omitted).

18              With respect to Plaintiffs' claim asserting intentional interference with the MMA operating

19 agreement (ECF No. 153 at 18-19), there is no dispute that Attentus was the managing member of

20 MMA (ECF No. 302 at 28-29) or that the managing member had the exclusive authority to carry out

21 and perform services of the LLC. *Id*. at 28. Attentus, a Plaintiff in this case, as a member of MMA,

22 and was arguably a beneficiary of the MMA operating agreement with which Plaintiffs allege

23 Defendants interfered. However, to prove an intentional interference with contract claim, the

24 proponent of this claim must show: (1) a valid and existing contract; (2) the defendant's knowledge

25 of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4)

26 actual disruption of the contract; and (5) resulting damage. *J.J. Indus., LLC v. Bennett*, 71 P.3d

27 1264, 1267 (Nev. 2003). Kory Razaghi was not a party to the operating agreement (albeit signatory

28 on behalf of Attentus). Attentus, a party to the operating agreement, cannot bring a direct claim on

1   behalf of MMA—that is, MMA must bring the claim itself.  NRS 86.381. The question that remains,

2   which neither party addresses, is whether there is any legal theory under which Attentus has standing

3   (such as a third party beneficiary) under the operating agreement to bring an intentional interference

4   claim and, even if Attentus has standing, whether that claim was asserted such that the claim should

5   proceed to trial.  While the Court has authority to consider these issues now[4] the Court declines to

6   do so.

7           In sum, the Court finds Defendants' Motion in Limine No. 3 (ECF No. 283) is denied with

8   respect to Defendants' efforts to prevent presentation of testimony and other evidence regarding the

9   bonus payment under Plaintiffs' unjust enrichment claim.  Plaintiffs have standing to pursue this

10  claim and there is no undue prejudice that arises from the introduction of evidence to support this

11  claim.  The Court holds that if Plaintiffs are awarded damages under their intentional interference

12  with contract claim, the Court will entertain motion practice under Federal Rule of Civil Procedure

13  50 regarding whether to set aside such an award.  There is insufficient time to brief this issue now

14  and the Court will not delay trial at this juncture.

15  **IV.   Relevancy Under FRE 403**

16          Because Defendants' arguments regarding FRE 403 are substantively identical in each

17  Motion in Limine, the Court addresses them once.  FRE 403 provides that district courts "may

18  exclude relevant evidence if its probative value is substantially outweighed by a danger of one or

19  more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

20  wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  However, the

21  simple fact that evidence is damaging to a party's case does not warrant exclusion, as "the more

22  probative the evidence is, the more damaging it is apt to be."  *United States v. Bowen*, 857 F.2d

23  1337, 1341 (9th Cir. 1988).  FRE 403 is only a basis to exclude *unfair* prejudice.  *United States v.*

24  *Thornhill*, 940 F.3d 1114, 1123 (9th Cir. 2019) ("[E]ven where evidence is highly prejudicial, it is

25

26

27  [4]      *Zeyen v. Bonneville Joint Dist., # 93*, Case No. 23-35438, 2024 WL 3909574 (9th Cir. Aug. 23, 2024) (clarifying
    that *Delta Sav. Bank v. United States*, 265 F.3d 1017 (9th Cir. 2001), governs when district judge may reconsider
28  interlocutory order of prior judge in same case and affirming reconsideration order of second district judge); *see also*
    *Relevant Grp., LLC v. Nourmand*, Case No. 23-55574, 2024 WL 4048894 (9th Cir. Sept. 5, 2024)

8

not necessarily unfairly prejudicial.") (citing *United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006)).

Here, Defendants fail to offer any persuasive basis to find any of the above testimony is unfairly prejudicial.  They argue at various points that they will be prejudiced due to Plaintiffs' failure to disclose an expert witness on these topics, thus preventing them from preparing a rebuttal report.  ECF No. 282 at 22; 284 at 17-18.  But as explained above, expert testimony is not needed if Plaintiffs can offer lay witnesses with the requisite knowledge to discuss Sage's operations during the relevant time periods.  Moreover, Defendants were not prevented from retaining their own experts to opine on the dissimilarity of services performed under the contracts at issue or on the calculation of damages.

Finally, Defendants argue that any testimony by Kory Razaghi as to the services provided to Sage after 2010 would be purely speculative.  ECF No. 282 at 21-22.  If Plaintiffs attempt to elicit testimony that Defendants feel is speculative from any witness they may object at trial.

The Court does not find the remaining blanket claims of prejudice under FRE 403 to be persuasive and thus denies them.

**V.     Order**

Accordingly, based on the foregoing, IT IS HEREBY ORDERED that Defendants' Motions in Limine Nos. 1, 2, and 4 (ECF Nos. 281, 282, 284) are DENIED.

IT IS FURTHER ORDERED that Defendants' Motion in Limine No. 3 (ECF No. 283) is DENIED; provided, however, that with respect to that portion of the Motion in Limine regarding Plaintiffs' intentional interference with contract claim, the denial is without prejudice.

Dated this 21st day of October, 2024.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

9